Good morning, Your Honors. May it please the Court, Mike Razzi, on behalf of the petitioner, Ms. Yolanda Acicon. With the Court's permission, I ask for three minutes to be reserved for any rebuttal. All right. Please watch the clock. Thank you. It counts down now. It counts down. You can start it from the beginning. Thank you. This is an immigration matter of a Guatemalan single mother of five United States citizen children who has resided in the United States for the almost 22 years, but has suffered several convictions, including a petty offense with a prior in the year 2000. The ultimate question is whether California Penal Code 666, petty theft with a prior, is categorically a generic theft offense and a crime so base, vile, or depraved that shocks public conscience and therefore constitutes a crime involving moral turpitude. I guess at the outset I have to make three important points. In this case, neither the government argues nor the IJ or the Board found that Ms. Acicon is an aggregate felon as that term is defined in the INA 101-A43. The second point is that we have never argued nor we have ever suggested that she is eligible for cancellation of removal under Section INA 240-AB1 HUSC 1229-B1C. At the same token, there is no argument that she remains eligible for NACARA Section 203 benefits, special rule cancellation of removal, as set forth in HCFR 240.66C, no matter how many criminal convictions of crimes involving moral turpitude or not she has suffered. The IJ in this decision summarily dismissed the petitioner's NACARA application in a mere two sentences at AR 44, administered record at 44, finding that there is no evidence that she is NACARA eligible. In so doing, she ignored the evidence of the record at administered record 225, which showed clearly that she is in fact NACARA eligible based on the fact that her husband was granted NACARA benefits. Furthermore, this court in Charlie Garcia v. Mukasey, 508F3R 1201-2007, found that where a class member, a Guatemalan class member, has submitted a solemn application in a timely manner between July of 1991 to December of 1991, they have in fact registered for ABC benefits and therefore are eligible for special rule cancellation of removal based on that section. MS. GOTTLIEB Counsel, are you limiting, are you, your argument you seem to be narrowing it to the NACARA-based cancellation of relief? MR. SHIRAZI We are. MS. GOTTLIEB Is that because you previously or your client previously conceded that petty theft is a crime of moral turpitude? MR. SHIRAZI No. I think that that was an issue. We admitted that her forgery offense in 1996 is a CIMT. That, there's no argument there. Forgery in 1996 was CIMT. We never conceded the fact that the crime of moral turpitude, the 2000 petty theft is a crime of moral turpitude. I think that was always an issue, explicitly and implicitly in our arguments at the Board and also at the Board at this level. MS. GOTTLIEB Petty theft is a crime of moral turpitude. MR. SHIRAZI Well, there's, of course, on the accompanying cases, they're going to be arguing Corona-Sanchez, I'm sure, which is the court case. MS. GOTTLIEB That's an aggregated felon case. MR. SHIRAZI Right. But there's also a case, there's also Cano and... MS. GOTTLIEB I think we have Flores-Juarez v. Mukasey in the United States v. Espada-Ponce. In U.S. v. Espada-Ponce, Cano as well, the court held that because the California statute criminalizes more than just taking of property, a conviction of grand theft is not categorically a CIMT. The California statute is unique, as the court noted in Corona-Sanchez. It's broad. It's broader than any other state's theft offense. MS. GOTTLIEB It's broader than the generic definition. MR. SHIRAZI It certainly is. Because it includes not only aiding and abetting, in a sense, it also includes the theft of... MS. GOTTLIEB Services. MR. SHIRAZI ...services, which is not included in the generic offense of theft. And therefore, it is broader. And that's why we're arguing it's not a CIMT, because it's not a generic theft offense. Our position has been consistently throughout these proceedings has been that this... MR. SHIRAZI Did you have a case where that happened, where somebody was charged with petty theft for stealing services? MR. SHIRAZI Well, not – I haven't researched – I mean, I haven't... MR. SHIRAZI There wasn't any, is there? MR. SHIRAZI I'm sorry? MR. SHIRAZI There wasn't any, is there? MR. SHIRAZI No, I haven't found – I haven't seen any, but... MR. SHIRAZI Well, that's the test. Is there one or isn't? There isn't. MR. SHIRAZI There isn't, but we didn't even get to this point in this court case because the judge didn't even do any analysis under the modified categorical approach. Here, the judge made a conclusive decision, and the Board did too, that this is, you know, a crime involving moral turpitude, and they didn't do the analysis on the tailor. And therefore, there was – there's no analysis as whether this case in particular was of theft of services or wasn't. MR. SHIRAZI Well, you have to find one, and you didn't find one here, and you didn't find one in the record of any other California case, so there you are. MR. SHIRAZI Right. MR. SHIRAZI You read the Supreme Court on this subject, I assume. MR. SHIRAZI I have. MR. SHIRAZI No. MR. SHIRAZI I have. And under tailor, the courts have concluded that you have to go through the analysis. MR. SHIRAZI You read the Supreme Court on this. MR. SHIRAZI Yeah. I think there – on that point, I think there is some – there has been some confusion based on the Supreme Court's decision in Duenas-Alvarez, which dealt with unlawful taking of a vehicle, and subsequent, the court concluded in Vidal and Pannulier, Vidal 1 and then Pannulier subsequently, that unlawful taking of a vehicle, per se, is not categorically a CIMT because it includes accessory – MR. SHIRAZI  MR. SHIRAZI Exactly. Joyriding and accessory after the fact. So therefore, there is – there is that tension between those two cases. But our position, obviously, is Pannulier is good law in this circuit, and Corona-Sanchez also remains good law in this circuit. I see I'm out of time at this point. MR. SHIRAZI You may reserve the rest of your time. MR. SHIRAZI I'll reserve the rest of my time. Thank you. JOSEPH ARDI Okay. Thank you, Your Honors. And may it please the Court, I'm Joseph Ardi for the Attorney General. Good morning, Mike. First of all, I'd like to point out, as the Board did, I'm going to be wanting to rest on my brief. I'd just like to make out a few points. In his Administrative Appeal Brief, as the Board noted in its decision, at page 11 of the record, it's page 5 of his Administrative Appeal Brief – excuse me, her Administrative Appeal Brief, Petitioner specifically conceded Respondent was convicted of multiple crimes of moral turpitude. She did not just concede that the March 5, 1996, forgery conviction was one for moral turpitude. It's page 11 of the record, line 3 of her Administrative Appeal Brief. That's what the Board pointed out in its decision on the first page. Okay? All right. So before the Immigration Judge, Petitioner never challenged that her crimes were not crimes involving moral turpitude. Any of the four crimes – she actually has five, but we only focused on four. Now, were these crimes committed during the relevant 10-year period? The Board has a decision, a matter of Cabrera-Ortega. It's a 2005 decision. It says that because a – we're talking about a cancellation application and the special rule cancellation applications. Because cancellation applications are continuing applications, the date that you should count backwards from is the date of the final administrative decision. It's the Board's decision, February 6, 2007. All right, so you're going to count back. We're only considering for purposes of – 2000 – It's just the 2000 ones. That's not the issue. Are you considering the forgery conviction, which has been set aside? The forgery conviction, it's still a conviction for immigration purposes. It was expunged for immigration purposes, not because of any substantive conviction. And in any event, he never challenged that that was not – or she never challenged that that was not a conviction. What is it? The good moral character requirement, if you look at 1260 – excuse me – both cancellation and special rule cancellation have the same good moral character requirement, correct? If you look at INA section USC 1101F, that's where good moral character is defined. I'll read it for the record. No person shall be regarded as or found to be a person of good moral character who, during the period for which good moral character is required to be established, is or was a member of one or more of the classes of person, whether inadmissible or not, described. And for our purposes, that's 1182A1AI. That's the crime involving moral character – crime involving moral turpitude. He only – she only needs one conviction. She has the 2000 one. Where the second one's come into play, it has nothing to do with the good moral character requirement. It's just whether she is eligible for the petty theft – or, excuse me, petty offense exception at 1182A2A2. That – the board – the decision that petitioner relies on heavily, DeAnda Romo, and the board cites in its decision points out that the petty offense exception is only good if the person – and in plain language of it says, shall not apply to an alien who committed only one crime. Even if the forgery conviction was expunged, she still committed that offense. We don't – it's irrelevant whether it was a conviction or not. It's just whether she committed it. And enacting that statute, Congress was only concerned with, look, this person, they only committed one offense. Let's give them another try. Here, this woman has four convictions. She actually has five because there's – on March 5, 1996, she also has the – something with the false use of a license under Calpena Code 470B. So, as I mentioned, she conceded that these offenses were crimes involving moral turpitude. Her only argument before the agency was that they were not – or that she did not have a good moral character. And to the extent that they did argue that, it was only under 1101F7. If you note, the immigration judge had two good moral character findings. The one under F3, that's the person who has one CIMT. And under F7, that's for the person who has convictions for which the total days served in prison are 180 days. The board found that the immigration judge was incorrect on that, found that the IJ was correct on the F3 finding. And Petitioner never challenged that. In fact, as a note, she conceded that they were CIMTs and he never made the argument as to the others. Which leaves us with – well, let me ask, are there any questions as to the applications for cancellation of removal? Okay, one thing before I move on to the asylum application, which was never addressed. The Petitioner recently submitted the 28J letter referring to Cholly v. – I believe it was – McKaysey, the 2007 case. Judge Warlaw, if you recall from Barrios v. Holder, for special rule cancellation of removal, simply being a derivative only makes you eligible to apply for special rule cancellation of removal. It does not mean that the immigration judge has to terminate proceedings and let you adjust your status under that rule. If you look at the regulation at 1240.61A4, that's what makes her eligible. And I'd actually invite you to look at the application for special rule cancellation of removal. The first page, she checks two boxes. One, that she's a principal under the ABC settlement, which is under 1240.61A4. She's saying that she's a derivative of her husband's application. But if you look above that, it actually says, I'm eligible to apply for such relief because of my status as these. It does not mean that she's eligible. She still needs to establish, as did the child in Barrios, if you remember, still had to independently establish his eligibility for special rule cancellation of removal. Because she lacks the good moral character for that, she's not eligible for that relief. Are there any questions with respect to the asylum application? I'm willing to rest on the brief if not. The petitioner did not address that in the opening presentation, so I don't know if I should go beyond the scope. The arguments in the brief still are made. They're still there, and I can address them if you want. Petitioner specifically, I'm sorry? This case has certain sympathies involved. The petty thefts, weren't they involving something like stealing a toothbrush at one point? Well, I mean, that requires us to look beyond the record, don't we? Isn't some of that in there? I mean, beyond the – no, because – I'm sorry. I think it was testimony to that effect. There's nothing in the conviction documents that establishes that. And there's U.S. citizen children. But we can go to that, if you will. I understand that this woman has four kids. Five U.S. citizen kids. Five U.S. citizen kids, and I understand that completely. She's been here for 20 years. And to the extent that myself or anyone else can really help her, for example, say if I wanted to go to DHS and say, well, look, can't we do something for this woman? She has five crimes. Five kids, five crimes. And don't for one second think that I'm here bashing or anything. I just want to say there really isn't much that I can go to the agency – It's a troubling case. It's a troubling case. It's a troubling case. You and I do agree on that. But there's really nothing at this point. These are not major crimes. These are not crimes involving – They're being petty in the vernacular. And to the extent that we can't do anything with that, I think Congress did consider that with the petty offense exception, right? It's, well, look, if you have one crime, we can do something for you. But she does have five. And so I don't know if there's really anything at this point, other than DHS exercising its discretion perhaps. I've worked with Mike before. I know he's a good guy. Perhaps he wants to go to the agency and say something to that effect. But there really is nothing that we can do. Is there a loose case if you got into it and maybe do mediation or something? Do you think there's any – These are statutory bars to these applications. And I would point out, Your Honor, that if you – again, I'm not bashing anyone. That's not me. I will say that she filed her applications, I believe, on February – or the special rule cancellation – or the NACARA application, to be clear for you. She filed that on February 17, 2000. And while that application was pending – I mean, they are simple crimes, but you would imagine that if you have an application pending, you wouldn't go commit two more crimes five months later. And so, I mean, there's really nothing that we can do with this one. Are there any questions? Judge Noonan? Judge Corman? Okay. And for the foregoing reasons, I would ask that the court dismiss the petition in part and to deny it in remaining. Thank you for your time. By the way, there was no – nobody made any credibility finding about her testimony? With the asylum application, no. She was quite honest. She said that nothing happened with her when she lived in the original town in 1985. Her mother had her moved to another town where she lived for approximately four or five years. And she was quite honest. She said that nothing happened to her to the extent that her – I see that my time is about to expire. May I sum that up? Thank you. She said the person that I guess she's most similar to would be her father, right? She said that these men were looking for her father. If you look at – I believe it's page – it's 40 of the transcript. I believe it's page 89 of the entire record. Weren't there some at least implicit threats to her? There are threats for saying leave or something would happen to you. We don't know exactly what would happen to her. She also said her father received similar threats, right? And she said that every time the father tried to hide in the bushland, they found him. But she testified that nothing happened to the father. To the extent that she said that the uncle disappeared, there was never any – to the extent that she tried to relate it to her, it was just relation by juxtaposition. We don't know what the circumstances were surrounding the uncle's disappearance. At the time that she even came to the United States, she specifically testified when she was in a town called – I guess you pronounce it – Chamfrederico from approximately 85 or 86 to 1990 when she left Guatemala, and nothing happened to her. For the immigration judge's purposes, I don't think that he questioned whether she had a subjective fear of returning to Guatemala, but there clearly is a problem with her establishing the objective reasonableness of her not wanting to return. Nothing happened to you during the time. And I'm willing to admit that, yes, this application was decided, I think, in 2004. She filed it in on October 24, 1991. At the time that she applied for asylum, she really had no claim. If you note, there's no affidavit. There's absolutely no documentary evidence in this to even support the objective reasonableness of her asylum application. If you look at page 232 of the transcript, it's an affidavit attached to her application for special rule cancellation of removal. You'll see that she really left the country for financial reasons, not because of any fear of people who – keep in mind that she did not know who these people were, whether they were the army, the government, guerrillas, whoever. So unless there are any other questions, I'd be willing to rest on the brief. All right. Thank you very much, counsel. Thank you for your time. Thank you. Thank you, Judge. No worries. Two important points. One is that the judge in her decision, page 44 of the administrative record, in two sentences dismissed her NACARA case. She never analyzed the NACARA application. But did she not – didn't she fail to introduce evidence that, in fact, her husband had been adjusted under the NACARA? And wasn't she really fine as a derivative? Well, actually, there is evidence in the record at page 225 on her NACARA application, which includes her husband's name and A number, which is required under that application. His file number. His file number. It's all there. So government has access to their husband's immigration file. They see if he was granted NACARA or was not. At that point, the relationship between them was somewhat difficult. But she submitted enough evidence here on the record, so the government could have found that she was NACARA-eligible as a derivative. But more importantly, she's NACARA-eligible under Challey as a principal because she applied timely for asylum. But what about the crimes of moral turpitude? That only comes into play for good moral character. And good moral character is, as the government correctly noted, is look back 10 years from the date of application. So the only offense that fell within those 10 years at that point was the 2000 petty offense with a prior. And that offense, we argued there and we argue now, is not a CIMT No. 1. And even if it were, it would fall into the petty offense. So if today this case were to go back today, she would unquestionably be eligible for NACARA because it's remanded. The problem is this court obviously, there is no power to remand just to have the case re-adjudicated unless there was some problem. You might have to reopen. Right, and there's no reopen. I mean, it's going to be very impossible to reopen this case, exactly. But if it were remanded, the 10 years, now we're in 2011, obviously the 10 years would put her outside of that good moral character requirement under 101F. The Housing Council argues that it's statutorily ineligible. That's incorrect. She is statutorily eligible for NACARA special rule cancellation. If you look at HCFR 240.66C, it specifically says that for special rule cancellation, because NACARA, if I could just real quick, I see I'm out of time, but just real briefly. When President Clinton and Congress passed NACARA, they specifically noted it's an emulative statute. It's trying to help these people who came here a very long time ago fleeing their country due to persecution, and therefore, they made it very broad so even CIMTs, with CIMTs, no matter how many they have, they would be eligible. Thank you. Do we have jurisdiction over this appeal on the NACARA ground? Yes, Your Honor. I don't think the government has ever argued that we have no jurisdiction on this case under NACARA. Thank you. Thank you, counsel. Eskom v. Holder will be submitted and we'll take it. Gibson v. Holder.
judges: Korman, Noonan, Wardlaw